Paul L. WOODSIDE, Plaintiff and
Respondent,

v.

Frank R. LEE, United States Smelting, Re-
fining and Mining Co., a foreign corpora-
tion, and all persons unknown claiming any
estate or interest in, or lien or encum-
brance upon the property described in the
complaint, Defendants,

Frank R. Lee, Defendant and Appellant.

No. 7560.

Supreme Court of North Dakota.

March 18, 1957.

E. A. Tannas, Crosby, E. J. McIlraith, Minot, for defendant and appellant.

R. H. Points, Crosby, Higgins & Donahue, Bismarck, for plaintiff and respondent.

BURKE, Judge.

Plaintiff brought this action to determine adverse claims to a quarter section of land located in Divide County. The defendant, Frank Lee, answered, alleging that he was the owner of a valid oil and gas lease upon the described property. The action was dismissed as to the defendant, United States Smelting and Refining Co., and the issues between the plaintiff and the defendant Lee were tried to the district court. The court found for the plaintiff and judgment was entered decreeing that the defendant, Lee's, lease had terminated and quieting title to the described land in the plaintiff, subject only to a mineral interest held by the defendant, United States Smelting and Refining Co. The defendant, Lee, has appealed and demanded a trial anew in this court.

There are two main issues presented upon this appeal. The first is whether an oil and gas lease from the plaintiff to the defendant Lee, expired by its own terms one year from the date of its execution. The second is whether the plaintiff is estopped by his conduct to assert that such lease had terminated.

The lease in question is what is referred to in the oil industry an "unless" lease. The provisions in this lease relating to termination are as follows:

"If operations for drilling of a well for oil or gas are not commenced on said land on or before one year from this date, this lease shall terminate as to both parties, unless the lessee shall, on or before one year from this date, pay or tender to the lessor or for the lessor's credit in the Farmer's State Bank at Crosby, N. D. or its successor or successors, which bank and its successors are lessor's agents, and which shall continue as the depository regardless of changes in the ownership of the land, the sum of Sixteen and No/100 Dollars which shall operate as a rental and cover the privilege of deferring the commencement of operations for drilling of a well one year from said date. In like manner and upon like payments or tenders the commencement of operations for the drilling of a well may be further deferred for like periods successively during the primary term of this lease."

The generally accepted construction of the provisions for the termination of an "unless" lease is that the "unless" clause does not state a condition subsequent upon which the lease may be forfeited but states a common-law or special limitation upon which the interest of the lessee terminates immediately. Summers Oil and Gas, Perm. ed. secs. 337, 452; 58 C.J.S., Mines and Minerals, § 200; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27; Valentine Oil Co. v. Powers, 157 Neb. 71, 59 N.W.2d 150; Kugel v. Young, 132 Colo. 529, 291 P.2d 695.

Upon failure of the lessee to commence drilling operations within the limited time, such a lease terminates ipso facto without any notice or demand upon the part of the lessor unless delay rentals are paid as provided by the lease. 58 C.J.S.,

Mines and Minerals, § 203, p. 491; 24 Am. Jur. (Gas & Oil, sec. 77) 585, 586; Summers Oil and Gas, Perm. ed. secs. 337, 451, 469; Phillips Petroleum Co. v. Curtis, 10 Cir., 182 F.2d 122; Richfield Oil Corp. v. Bloomfield, 103 Cal.App.2d 589, 229 P.2d 838; Kugel v. Young, 132 Colo. 529, 291 P.2d 695; Amos v. Waggoner, 229 La. 134, 85 So.2d 58; Valentine Oil Co. v. Powers, 157 Neb. 71, 59 N.W.2d 150; Lewis v. Grininger, 198 Okl. 419, 179 P.2d 463; Copeland v. Lampton, Tex.Civ.App., 125 S.W.2d 1110.

The oil and gas lease with which we are here concerned was executed on April 27, 1950. Under its terms the lease would terminate one year thereafter unless within that year the lessee commenced drilling operations or paid a delay rental of $16. No drilling operations were commenced nor was there any payment or attempt to make payment of delay rentals on or before April 27, 1951. It follows from what has been said above that the lease terminated on the expiration of that day.

■ However, the lessee's agent mailed to the lessor a bank draft in the sum of $8, dated May 17, 1951. This draft was received by the lessor but was never cashed by him or returned to the lessee. In the following year and prior to April 27th the lessee mailed another bank draft in the sum of $8 to the lessor. This draft was received by the lessor but it was not cashed or returned to the lessee. This action was commenced prior to the time the third year's delay rental would have been due, had the lease remained in force. The reason that the bank drafts received by the lessor were in the sum of $8, instead of $16 as called for in the lease, was because a forged deed purporting to convey one half of the lessor's mineral interests had been placed of record in Divide County. It is undisputed that other drafts in the sum of $8 had also been sent to a subsequent grantee of the interest described in the forged deed. There is no question but that the lessee, in good faith attempted to distribute the rental payments in accord with the mineral interests as shown by the record.

Lessee contends that his good faith attempts to pay and the lessor's acts in failing to notify him that he was rejecting the belated payment in an insufficient amount and his retention of the drafts for an unreasonable length of time entitle the lessee to some relief. The lessee states that the acts of the lessor are a waiver of his right to declare a forfeiture or estop him from asserting that the lease terminated. As has been pointed out no question of forfeiture is involved. The lessor is not asking a forfeiture of the lease but is seeking its enforcement.

■ Upon the question of estoppel, the trial court's memorandum opinion clearly and accurately sets forth the principles of law applicable and reaches what in our opinion is a correct conclusion. We therefore quote and adopt the following language from that opinion:

"It will be observed that in all cases where estoppel has been applied against the lessor that the lessor was guilty of conduct which gave rise to equitable considerations. The basic concept of estoppel requires a representation and reliance thereon to the detriment of the injured party. See Commercial Credit Corp. v. Dassenko, 77 N.D. 412, 43 N.W.2d 299; Sailer v. Mercer County, 75 N.D. 123, 26 N.W.2d 137. Thus, there are numerous cases where the lessor in accepting delay rentals induced the lessee to commence drilling operations at great expense. Obviously the retention of rentals in such a situation relied on by the lessee to the extent that he thereafter commenced the drilling of a well creates a change in his position. In the case at bar, however, there are no equitabe considerations whatever which may be raised in favor of the lessee defendant, Lee. He has done nothing in reliance on the tenders which were made other than to make further tenders all of

which have been refused by the lessor, the plaintiff. The court holds that the tender of an inadequate amount by a bank draft which the recipient refuses to cash, absent reliance thereon by the lessee to his detriment, does not create an estoppel so as to reinstate an oil and gas lease which had already terminated. Vaughan v. Doss, 219 Ark. 963, 245 S.W.2d 826; 1 Oil and Gas Reporter 250. See also 5 A.L.R.2d 993."

The judgment of the district court is affirmed.

GRIMSON, C. J., and JOHNSON, SATHRE and MORRIS, JJ., concur.