[Civ. No. 6458.    Third Appellate District.—December 28, 1940.]

JEAN BRYAN STETSON et al., Respondents, v. ORLAND OIL SYNDICATE, LTD. (a Corporation), et al., Appellants; ELIZABETH M. DOLAN, as Administratrix, etc., Intervener.

Charles I. Rosin for Appellant.

H. W. McGowan, Morrison, Hohfeld, Foerster, Shuman & Clark and Noel A. Troy for Respondents.

PARKER, J., *pro tem.*—This was an action wherein plaintiffs sought a decree quieting their title in and to certain lands in Tehama County.

The defendants admit title in the plaintiffs to the lands in controversy but claim a leasehold interest therein by virtue of a certain oil and gas lease entered into between the parties.

The trial court found that the lease was terminated prior to the commencement of the action and entered its decree quieting the title in the plaintiffs and further decreeing that the defendants have no interest in or to the property. From this decree defendants prosecute the appeal.

A brief outline of the facts, as gleaned from the transcript before us will suffice to illustrate the points relied on. On the 24th day of March, 1930, the parties executed an oil

and gas lease agreement, covering the premises in dispute. The instrument recited that the agreement was for "the sole and only purpose of mining and operating for oil and gas and of laying pipe lines and of building tanks, power stations and structures thereon to produce, save and take care of said products". The term of the lease was three years from the date thereof and as long thereafter as oil or gas or either of them is produced from said land by the lessee. The lease further provided, and it is around this provision that the controversy centers, as follows:

"If no well be commenced on said land on or before the 24th day of March 1931, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, . . . the sum of Three Hundred forty-two & 50/100 dollars, which shall operate as rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payments or tenders, the commencement of a well may be further deferred for like periods of the same number of months successively."

Pursuant to the instrument, the lessees entered upon the property. No well was commenced prior to March 24, 1931, and lessees availed themselves of the deferment privilege by paying the amount specified. The same procedure followed through the remaining two years of the lease.

On March 31, 1933, the date on which the lease expired, the lessees remained in possession and again paid the deferment money. From year to year this practice was followed until, at some date prior to March 24, 1938, the lessees became aware, after negotiations to that end had been initiated, that lessors would no longer accept delay money. On March 21, 1938, the lessees, aware that no deferment was obtainable, undertook the commencement of a well; that is, it is their contention that they did. The trial court found that the activities going to make up this claimed commencement were mere pretenses and not *bona fide* and thus inferentially found that no well had been commenced. The evidence at the trial was confined to this one point, namely, the good faith of the lessees in this so-called commencement, and the finding being as indicated is the main point of the appeal. From a careful reading of the scant testimony on the subject, we conclude that the trial court's finding has abundant

support in the record and we refrain from any analysis for the reason that we consider the issues immaterial.

The mere commencement of a well, or the failure to commence a well, is not all-controlling.

Adopting, for the sake of argument, the contention of appellant that the acceptance of moneys from year to year continued the conditions of the lease, it could not extend the term thereof beyond each year. Even under the original lease, there was a choice of action, either to commence a well or to pay the delay money. If a well were commenced no delay money was due or payable or no deferment privilege was to be exercised. But the commencement of a well was merely one condition of the lease that in nowise affected the term of years constituting the life of the agreement. Under the lease appellants could have commenced a dozen wells and if at the expiration of three years no oil or gas was produced the lease terminated. The year to year deferment did not change this situation. The most favorable view would hold that the yearly payments, after the expiration of the three-year period, merely gave the lessees a term of one year additional upon payment of the delay money. (Civ. Code, sec. 1945.)

The whole effect of this extension, tying into the lease terms and the purpose thereof, was to permit the discovery and production of oil and gas or either. Taking, therefore, the matter by its four corners, if the lessees did not commence a well and did not pay the delay money for further deferment they were no longer entitled to any rights under the lease; if they did waive further deferment by the actual commencement of a well and the period of the lease had expired and no production had been attained, they were likewise out.

It is conceded that no deferment money was paid, and it is further conceded that no oil or gas was ever produced.

Appellants further urge on this appeal that they were entitled to ninety days' notice of termination and a specification of the grounds claimed therefor in order that opportunity might be afforded to remedy any breach. From the statement of the case as made it is obvious that such a contention is without merit. In the first place, the lease imposed no obligation upon lessees to commence a well. Appellants had the option as to whether they would or would not commence a well and they had the right to defer any commence-

ment until the last day of the lease. Therefore, there could have been no ninety-day period within which such a notice could have been given. No forfeiture of the lease is claimed by respondents. They stand squarely upon the fact that the lease has terminated by its own terms. Surely a forfeiture notice for breach of conditions would not be required to advise appellants that the term had ended. If the term ends there is nothing that appellants could do to remedy that situation. (See *Caswell* v. *Gardner,* 12 Cal. App. (2d) 597 [55 Pac. (2d) 1222]; *C. M. Staub Shoe Co.* v. *Byrne,* 169 Cal. 122 [145 Pac. 1032].) ■ We may further cite the case of *Williams* v. *Edge,* 192 Cal. 254 [219 Pac. 747], wherein it is stated that if the provision of the lease respecting the giving of notice of default had any operation in the case at bar it was waived by appellants by their contesting respondents' quiet title action upon the theory that they were not in default under the lease. This is followed in *Calhoma Oil Corp.* v. *Conniff,* 207 Cal. 648 [279 Pac. 771].

■ Appellants next claim that, under the provisions of the lease, any question of disputed fact shall be first referred to arbitration and that respondents are therefore without remedy, other than through such procedure, inasmuch as the lease provides that the decision of the arbitrators shall be a condition precedent to any right of action, and that there was no submission to arbitration in the instant case. A complete answer to the foregoing contention is found in the case of *Hanes* v. *Coffee,* 212 Cal. 777 [300 Pac. 963]. The appellants contend that this authority has no application. We accept it as controlling. It determines the issue of failure to arbitrate adversely to the appellants in this case.

In conclusion we are mindful of the contention of the respondents that there were never any issues presented in the court below under the pleadings. We think there is much merit in this contention, but we have chosen to review the case on its merits inasmuch as the trial court did make findings responsive to the evidence adduced.

Supporting the views herein announced reference is made to the case of *Fagan Co.* v. *Burns,* 247 Mich. 674 [226 N. W. 653, 67 A. L. R. 522], and to the exhaustive notes accompanying the reported case. A full discussion of the effect of delayed payments and the rights accruing to either party under

oil leases providing for the commencement of a well, is there found.

The judgment is affirmed.

Tuttle, J., and Pullen, P. J., concurred.

A petition for a rehearing was denied on January 27, 1941.