[Civ. No. 17970.   Second Dist., Div. Two.   May 14, 1951.]

NORRIS OIL COMPANY (a Corporation), Respondent, v. ELMER C. von GLAHN et al., Appellants.

Walter H. Hewicker for Appellants.

W. E. James for Respondent.

MOORE, P. J.—The judgment herein quieted title in respondent whose interest is a leasehold estate. The court found that the two leases theretofore executed by respondent to appellants had terminated prior to the commencement of this action and the latter now have no interest in the lands described.

Appellants contend here that the default under the lease resulting from their failure to commence drilling operations within a year from the date of the writing and their failure to tender rentals within the year did not *ipso facto* terminate their rights. They claim that the leases could be terminated only upon their failure to cure the default within 30 days after service of notice of default as provided by paragraph 22. On the contrary, respondents contend that the leases involved are of the "unless" type which provide for an *ipso facto* termination of the lessee's rights if drilling be not commenced within the time specified unless the drilling time is extended by the payment of deferment rental. (See XIII So.Cal.L.Rev., pp. 403-405.)

■■ From the language of paragraphs 5, 6, and 22 of the leases it is readily to be seen that appellants are endeavoring to establish that the lease may be terminated by the lessee only* and that if the lessee does not elect to terminate the

---

*"5. The Lessee agrees to commence drilling operations on said land within one year from the date hereof (unless the Lessee has sooner commenced the drilling of an offset well on said land as herein provided) and to prosecute the same with reasonable diligence until oil or gas is found in paying quantities, or to a depth at which further drilling would, in the judgment of the Lessee, be unprofitable; or it may at any time within said period terminate this lease and surrender said land as hereinafter provided. No implied covenant shall be read into this lease requiring the Lessee to drill or to continue drilling on said land, or fixing the measure of diligence therefor. The Lessee may elect not to commence or prosecute the drilling of a well on said land as above provided, and thereupon this lease shall terminate."

"6. Commencing one year from date if Lessee has not theretofore commenced drilling operations on said leased land or terminated this lease, the Lessee shall pay to Lessor yearly in advance, as rental, the sum of one dollar per acre for so much of said land as may be held under

lease, he shall pay yearly in advance a rental of $1.00 per acre until drilling commences. Paragraphs 6 and 22 are not controlling. Paragraph 6 permits the lessee to pay a yearly, advance rental of $1.00 per acre until operations are commenced, if the lessee has not begun drilling within one year from date of the lease. Paragraph 22 makes provision for a procedure and penalty in event the lessee violates a term or condition of the lease and fails to commence to remedy such violation within 30 days after notice to do so. That paragraph applies to lessee's failure to perform other conditions as required by the lease (*Alexander* v. *Oates*, 100 Cal.App.2d 266 [223 P.2d 264]; *Carlisle* v. *Lady*, 109 Cal.App. 567, 573 [293 P. 686]) and is not inconsistent with the provision contained in paragraph 5 which distinctly provides that "the lessee may elect not to commence or prosecute the drilling of a well on said land as above provided, and thereupon the lease shall terminate." In *Alexander* v. *Oates, supra,* because the lessee was obligated to commence drilling on the land within three years he forfeited his lease for failure to commence within that period. In *Carlisle* v. *Lady, supra,* because the lessee did not "commence drilling of a test well within said additional 3 months," the lease *ipso facto* terminated, and the notice declaring a forfeiture "relates to the covenants of the lease and not to the condition" which required the lessee to commence drilling a test well within six months; or within the additional three months gained by paying the lessor fifty cents an acre per month. So, in the leases at bar, the provisions of paragraphs 6 and 22 relate to the commencement of drilling after the lapse of the first year of the lease term. *Wilcox* v. *West*, 45 Cal.App.2d 267 [114 P.2d 39], involved a similar lease. While the appellants there acknowledged their cause would have been hopeless if they had not commenced drilling operations, still they prevailed because they performed as provided. But the opinion observed: "The lease here involved is what is generally known as the 'unless' lease, and results in an automatic termination of the lease

---

this lease at the time of such payment, until drilling operations are commenced or this lease terminated."

"22. Upon the violation of any of the terms or conditions of this lease by the Lessee and the failure to begin to remedy the same within thirty days after written notice from Lessor so to do, then, at the option of the Lessor, this lease shall forthwith cease and terminate, and all rights of the Lessee in and to said land be at an end . . ."

if the lessee fails to commence operations within the time limited, and fails to pay delay rentals in advance.''

Only recently this court decided *Richfield Oil Corp.* v. *Bloomfield,* 103 Cal.App.2d 589 [229 P.2d 838], No. 18205, wherein a lease containing similar provisions was held to have been properly forfeited by reason of the lessee's failure to commence drilling operations. A discussion of the ''unless'' variety of oil lease will be found there.

The authorities cited by appellant (*Title Ins. & Trust Co.* v. *Amalgamated Oil Co.,* 63 Cal.App. 29 [218 P. 71] ; *Griffin* v. *Kent,* 111 Cal.App. 569 [295 P. 854]) are not pertinent. Neither contained a provision for an *ipso facto* termination in the event of lessee's failure to commence drilling within a specified time.

Affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied June 1, 1951, and appellants' petition for a hearing by the Supreme Court was denied July 12, 1951.